UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

MAGIC HAT IP, LLC, AND
INDEPENDENT BREWERS UNITED CORPORATION,

               Plaintiff,

        vs.               Civ. 5:13-cv-00136-DCR

WEST SIXTH BREWING COMPANY, LLC,

               Defendant.      **JURY TRIAL DEMANDED**

---

### FIRST AMENDED VERIFIED COMPLAINT

Plaintiffs Magic Hat IP, LLC and Independent Brewers United Corporation (collectively "Magic Hat") state as follows for their First Amended Verified Complaint against Defendant West Sixth Brewing Company, LLC ("West Sixth"):

### INTRODUCTION

1. This is an action by Magic Hat to redress both West Sixth's blatant infringement of Magic Hat's trademarks, examples of which include:





as well as West Sixth's malicious social media advertising smear campaign – initiated following this lawsuit – to disparage Magic Hat's products and business through a series of false and misleading advertisement materials on its website and Facebook page.

2.   Upon information and belief, one or more of West Sixth's founders and/or employees acknowledged the similarities between the two marks at issue, as have others, long before this lawsuit was filed.  And yet, in response to Magic Hat's infringement Complaint, West Sixth, in utter disregard of federal and state law, used a series of knowingly false advertising materials to convince consumers that Magic Hat was a "corporate bully" who had initiated a "silly" and "frivolous" complaint and had ignored West Sixth's purported attempts to resolve the matter amicably.  As set forth herein, this account is flatly at odds with the truth:  it was Magic Hat, not West Sixth, that initiated discussions in September 2012 in an attempt to avoid this lawsuit.  And it was only *after* West Sixth retreated from the terms to which it had previously agreed in principle – and Magic Hat discovered a new can design released by West Sixth during the negotiations that was even more blatantly infringing on Magic Hat's marks (see above) – that

Magic Hat realized West Sixth had no intention of working out a mutually agreeable resolution of the matter, forcing it to pursue its formal legal remedies.

3.      Upon information and belief, one of West Sixth's founders and owners, Ben Self, is also the founder of Blue State Digital, a consulting firm that specializes in new media strategy for political candidates.   Upon information and belief, Mr. Self also is a former resident of Vermont, where Magic Hat originated and is still located.   Thus, West Sixth – far from being the underdog in this supposed "David v. Goliath" battle as it portrayed itself to the public in advertising materials – was a savvy competitor that undertook its campaign knowing full well the harm its false statements, half-truths, and distortions would accomplish.   Magic Hat now seeks to hold West Sixth to account for its violations of the law.   West Sixth's conduct has harmed and threatens further irreparable harm to Magic Hat's reputation, goodwill, customer relations, and business relationships with its retailers and distributors unless enjoined by this Court.

4.   Magic Hat's infringement claims themselves are straightforward and supported by numerous instances of actual confusion.   Magic Hat (through its licensee and predecessors) has used the trademarks #9® and #9 and design (collectively the "#9 Marks") for beer and ale since at least as early as 1995 and 2007, respectively.   Due to the importance of these marks, Magic Hat obtained a United States Trademark Registration, No. 2024581, for its #9 mark on December 18, 1996, for "beer and ale" in Class 32.   Because Magic Hat filed the appropriate § 8 and § 15 Affidavits, its rights in this mark are incontestable.   In addition, Magic Hat also used and applied to register its #9 and design mark with the United States Patent and Trademark Office ("USPTO").   Magic Hat has taken all reasonable precautions to protect its valuable intellectual property rights in the #9 Marks.

5.       Without permission or license, West Sixth began selling beer, ale, and brewpub services in 2012 under trademarks, designs, and trade dress that closely resemble and are confusingly similar to Magic Hat's #9 Marks, designs, and trade dress.

6.       West Sixth's actions constitute trademark and trade dress infringement upon Magic Hat's rights, for which it is liable to Magic Hat.

7.       Accordingly, Magic Hat seeks damages and injunctive relief under state and federal law to remedy the substantial infringement, disparagement, unfair competition, and other tortious acts by West Sixth.

## PARTIES

8.       Magic Hat IP, LLC is a Vermont limited liability company with its principal place of business at 5 Bartlett Bay Road, South Burlington, Chittenden County, Vermont.

9.       Independent Brewers United Corporation is a Washington corporation with its principal place of business at 91 South Royal Brougham Way, Seattle, King County, Washington.

10.       Magic Hat IP, LLC owns the rights in the intellectual property at issue in this matter and licenses to Independent Brewers United Corporation the right to use such intellectual property.

11.       On information and belief, Defendant West Sixth Brewing Company, LLC is a Kentucky limited liability company with its principal place of business at 501 West Sixth Street, Suite 100, Lexington, Fayette County, Kentucky.

## JURISDICTION AND VENUE

12.       Magic Hat's claims against West Sixth arise under 15 U.S.C. § 1125 (trade dress infringement and false advertising and trade disparagement), 15 U.S.C. § 1114 and 1125

4

(trademark infringement),  Ky. Rev. Stat. Ann. § 365.601-365.603 (trademark infringement), and the common law of the Commonwealth of Kentucky (unjust enrichment, unfair competition, intentional interference with contractual relations and business expectancies, trade libel and defamation).

13.     This Court has jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

14.     This Court has jurisdiction over the related state and common law claims pursuant to 28 U.S.C. §§ 1367 and 1338(b).

15.     This Court has personal jurisdiction over Defendant West Sixth because its primary place of business is located in Lexington, Kentucky and, upon information and belief, its infringing products are widely sold throughout the Commonwealth of Kentucky, including in this District and this District's Central Jury Division.

16.     Venue is appropriate in this District under 28 U.S.C. § 1391 and 1400 because Defendant West Sixth's principal place of business is located in this District.

### FACTS AND CIRCUMSTANCES UNDERLYING THE CLAIMS

**A.  Magic Hat's Intellectual Property Rights.**

17.     Plaintiff Magic Hat is one of the largest and most well-recognized craft brewers in the United States.  Magic Hat (through itself, its licensee, and its predecessors Independent Brewers United Corporation and Magic Hat Brewing Company & Performing Arts Center, Inc.) has sold its products, including its flagship #9® beer, in convenience stores, grocery stores, restaurants, bars, package stores, and liquor stores throughout the United States since 1995. Magic Hat's products have garnered widespread consumer recognition and approval.

5

18.    Magic Hat has sold its beer and ale in Kentucky, including product branded with its #9 Marks, since at least as early as 2009.

19.    Early on, Magic Hat invested heavily in its image and marketing, and developed unique and distinctive marks, logos, and trade dress for its products.

20.    Initially, Magic Hat developed, used, and registered its #9 trademark for "beer and ale" (the "#9 Mark"), which is the subject of United States Trademark Registration 2,024,581.  Magic Hat filed its application to register the #9 Mark on April 14, 1995 and the registration issued on December 17, 1996 (the "#9 Registration").  Magic Hat's rights in the #9 Mark are incontestable.  Attached as **Exhibit A** is a copy of the #9 Registration.

21.    Also, Magic Hat developed a creative and original design for use with its #9 product.  On June 24, 2010, Magic Hat applied to register the following work with the United States Copyright Office and was issued Copyright Registration VA 1-724-477 (the "#9 Copyright Registration"):



(the "#9 Work").  A copy of the #9 Copyright Registration is attached as **Exhibit B**.

22.    In addition, Magic Hat applied to register the following #9 and design trademark with the USPTO on March 22, 2013 (Application Serial No. 85883897) (the "#9 Design Application"):



(the "#9 Design Mark").   A copy of the USPTO record for #9 Design Application is attached as **Exhibit C.**

23.    Magic Hat markets its handcrafted, premium beer and ale under the #9 Marks throughout the United States.  Magic Hat uses the #9 Marks in advertising and promotional materials and on bottles, cans, six-packs, twelve-packs, kegs, tap handles, and point-of-sale displays.  Its marketing also includes the sponsoring of sporting and entertainment events using the #9 Marks, including events in Kentucky.

24.    Through Magic Hat's advertising, marketing, and sales efforts, the distinctive #9 Marks have become well known to consumers as an indication that beer and ale sold under such marks emanate exclusively from Magic Hat.

25.    Magic Hat's non-functional trade dress, which includes the #9 Marks, is inherently distinctive and/or has acquired secondary meaning in the trade and among the relevant consuming public as a symbol identifying Magic Hat as the source of its products.

26.    The trade dress for Magic Hat's #9 branded products is characterized by its distinctive orange color, which is the predominant color on its labels, the presence of the

"dingbat" star, and the circular motif that appear in the #9 Design Mark (the "Magic Hat Trade Dress").

**B. Defendant West Sixth's Infringing Intellectual Property.**

27.     Upon information and belief, Defendant West Sixth sells beer, ale, and brewpub services under the trademarks 6 and Design:



("6 and Design Mark") and WEST SIXTH BREWING 6 and design:



(the "WEST SIXTH BREWING 6 and design mark") (collectively, the "6 Marks").

28.     On September 27, 2012, Defendant West Sixth filed an application with the USPTO to register the WEST SIXTH BREWING 6 and design mark (Application Serial No. 85739821) ("6 and Design Application").  A copy of the USPTO record for the 6 and Design Application is attached as **Exhibit D.**

29.     Upon information and belief, Defendant West Sixth has sold beer, ale, and brewpub services under the 6 Marks in certain markets, including portions of Kentucky and Ohio, since April 1, 2012.

30.     Upon information and belief, and based upon reports from Magic Hat's distributors, Defendant West Sixth recently expanded its use of the 6 Marks for beer and ale into South Carolina and intends to begin selling its beer and ale using the 6 Marks in other new markets in other states in the near future.

31.     In addition, despite being on notice from Magic Hat (and others) that its logo was confusingly similar to Magic Hat's #9 Marks, Defendant West Sixth moved forward with introducing its Amber Ale product, which is offered under the 6 Marks in orange:



32.     Orange is the primary color used in Magic Hat's trade dress and copyrighted work.  Therefore, West Sixth's recent use of its 6 Marks in orange makes its trademarks, designs, and trade dress even more closely resemble that of Magic Hat.  Further, West Sixth has used a

"dingbat" star to further suggest the trade dress of Magic Hat's products in an effort to confuse consumers and trade on Magic Hat's good will.

33.     Defendant West Sixth uses the 6 Marks on cans, kegs, glasses, flight trays, coasters, tap handles, signs, advertising and promotional materials, and point-of-sale materials.

34.     Defendant West Sixth competes directly with Magic Hat for sales of beer and ale in the markets in which West Sixth is presently active and intends to become active.

35.     In fact, the parties both use many of the same distributors for their products.

36.     Defendant West Sixth's 6 Marks and trade dress are confusingly and substantially similar to Magic Hat's #9 Marks and trade dress and have resulted in actual confusion among consumers.  Many of these instances of confusion were uncovered (unwittingly, no doubt) by West Sixth itself in the course of its social media smear campaign discussed, *infra*.  A few examples, canvassed from consumer comments include:

- "Sorry to hear about this.  I lived in Lexington last year when [West Sixth] opened.  During a private brewery tour that I was on shortly after they opened, i asked the owner (who was giving us the tour) if they heard about Magic Hat.  He said then (May of 2012) that he knew his label was similar.  I even showed him the Magic Hat key chain I had in my pocket and he laughed."  Posted by Brian Cook on Magic Hat's Facebook page on May 21, 2013.

- "Methinks this was a fight that needn't have been picked! First, I want to emphatically state that I love West Sixth beers! I stopped by the taproom soon after it opened… 2 sips into my first pint of IPA, I bought a case! Had several other beers during that visit, not a weak one in the bunch! At the same time, I commented to the bartender that the logo looked god-awful like Magic Hat's #9 turned upside-down. He replied, yeah, we hear that a lot!" Posted to a poll at the following link at May 22, 2013, at 5:50 p.m. by fretwalker: http://thefullpint.com/polls/quick-polls-magic-hat-vs-west-sixth-brewing/#comments.

- "Hate to say it but I sent an email [to West Sixth] well over a year and a half ago about this very thing.  The response was "We've spoken to a patent attorney and there isn't a problem." And "We went to Magic Hat and met with those guys. They love us."  Well, it seems as though that may now not be the case.  Best of

luck to West Sixth and all those involved but before the bright tanks were in and the stickers came and the floor plans were getting finalized. . . . .. .it was pretty clear it would be an issue.  Ben, I hope this goes in your favor but a change seems to be eminent.  Statement posted by  Humeulus on Facebook, May 23 at 9:44pm.

- "I am an avid drinker of both beers.  I have also gone to a bar in Lexington and have seen W6th on tap…but ordered a Magic Hat because the logos are so similar."  This comment was posted on West Sixth's website by Trevor on May 22, 2013 at 10:53 am.

- "I recently read about the law suit against West 6th.  I was shocked.  Not by the action, but by the fact that it WASN'T YOUR BRAND.  Up until yesterday, I actually thought that beer (the IPA) was just one of the new varietals of Magic Hat.  I was shocked."  Sent to Magic Hat's consumer affairs office by Nicholas Spurlock of Kentucky.

-  "I just posted on Facebook about it . . . West Sixth makes great beer, I have to admit that I honestly did pass over buying it the first couple of times I saw it because I thought it was just one Magic Hat's beers and not a tasty local craftbrew."         This     comment    was        posted      at http://bluegrasspreps.com/bluegrasspreps-coms-break/west-sixth-vs-255366.htm. on May 22, 2013.

- "Throughout this squabble, every time I see the West Sixth logo I think it's a Magic Hat beer.  Just sayin'".  Posted on the Beer Advocate website on May 22, 2012 at 5:30 pm by "BumpkinBrewer" of Massachusetts.

- Michael Lazear posted this comment on West Sixth's Facebook page on May 21, 2012, at 9:22 p.m.: I haven't tried your beer and I'm sure it's amazing. BUT to be honest when i 1st saw the logo i thought Magic Hat came out with a new beer. That doesn't mean i agree with a lawsuit or anything and can chalk it up to just not knowing about the beer or thoroughly reading the label. I'm talking quick, 1st glance. Pls no name calling or bashing my opinion. I am not trolling for online arguments. Just stating an honest opinion. PEACE!

By its actions, Defendant West Sixth has infringed Magic Hat's rights under trademark and trade

dress law.  For such infringement, Magic Hat seeks various remedies, including injunctive relief

and damages.

**C.  West Sixth's Disparagement of Magic Hat and other Tortious Acts.**

37.     Upon information and belief, shortly after West Sixth began use of its 6 Marks, West Sixth received communications from individuals concerned about the confusion created between West Sixth's new 6 Marks and Magic Hat's #9 Marks.

38.     Based upon this information, Magic Hat became concerned that West Sixth's use of the 6 Marks would cause consumers to be confused as to the source of beer when offered under such marks due to the similarities between the #9 Marks and the 6 Marks.

39.     On September 26, 2012, Magic Hat wrote a letter to Ben Self, an owner of West Sixth, to inform him of Magic Hat's concerns, explain Magic Hat's rights in the #9 Marks, and request that West Sixth stop use of the 6 and Design Mark.  **Exhibit E**.

40.     In this letter, Magic Hat explained the similarities between the marks (among other things, West Sixth's mark is an inverted 9, both marks contain an eight-pointed star, and both marks are presented in a circular motif) and the importance and value of the #9 Marks to Magic Hat.  Magic Hat also explained why it believes that consumers will be confused as to the source of beer when it is sold under the 6 Marks.   Finally, Magic Hat made clear that it was attempting to resolve this matter without filing litigation.

41.     On October 26, 2012, West Sixth's counsel responded by letter, in which she advised that her firm was representing West Sixth and that Magic Hat was to direct all future correspondence with West Sixth to her.  **Exhibit F**.

42.     In the October 26, 2012 letter, West Sixth disputed Magic Hat's position on the trademark infringement issue.  One of West Sixth's main arguments was that it does not use the 6 and Design Mark alone, but uses it only with the words WEST SIXTH BREWING.

43. Finally, in a stated "effort to resolve this matter," West Sixth "agree[d] to remove or replace the 'stylized compass design' [also referred to as the eight-pointed star] from West Sixth's beer and ale products…."

44. Magic Hat responded in a letter dated December 26, 2012. **Exhibit G**.

45. In its letter, Magic Hat expressed its appreciation of West Sixth's willingness to resolve this matter and confirmed what it believed to be a resolution of this matter, which included the following terms: that West Sixth would remove the eight-pointed star from its 6 Marks and use the words WEST SIXTH BREWING consistently with its 6 and Design Mark.

46. West Sixth responded in a letter dated January 11, 2013. **Exhibit H.**

47. In this letter, West Sixth proposed that it would either remove the eight-pointed star and/or change it to something else to make the 6 Marks more different from the Magic Hat #9 Marks, use the words WEST SIXTH BREWING consistently with the 6 and Design Mark, phase out goods that contained the 6 and Design Mark (with the eight-pointed star), and amend its trademark application to remove the eight-pointed star.

48. By letter dated February 5, 2013, Magic Hat confirmed the terms, reserved its right to contest any new mark that West Sixth may use if such mark is confusingly similar to Magic Hat's #9 Marks, and clarified West Sixth's phase out obligations. **Exhibit I.**

49. In a letter dated February 27, 2013, West Sixth stated that it had changed the terms and decided that it would continue to use the eight-pointed star. **Exhibit J.**

50. West Sixth's change to one of the most basic terms transformed the entire proposal. Contrary to its earlier representations, West Sixth now insisted that it would (1) retain a United States trademark registration for the mark that included the eight-pointed star and (2) continue to use the 6 and Design Mark, including the star, without the words WEST SIXTH

13

BREWING in a circle over the mark at its brewery and taproom, and on items already distributed, which includes tap handles in bars.

51.     Magic Hat was surprised and disappointed at West Sixth's sudden and unexpected change in position.  Prior to West Sixth's February 27, 2013 letter, Magic Hat believed that this matter had been largely resolved.

52.     Magic Hat had worked hard with West Sixth over many months to reach a compromise and West Sixth had changed its position at the last minute, with no regard for its prior assurances and representations.

53.     Accordingly, Magic Hat determined that West Sixth was not going to stop infringing without litigation.

54.     To make matters worse, shortly after West Sixth changed its position, Magic Hat received a photograph and communications from one of its sales agents showing that West Sixth had recently launched its Amber Ale product:



55.     This product is sold under a mark and trade dress that is even more similar to Magic Hat's marks than West Sixth's other products.  The sales agent that learned of this product advised that he had seen it at a retail account store in South Carolina.

56.     Magic Hat reasonably concluded that West Sixth did not intend to respect Magic Hat's intellectual property rights, in light of West Sixth's changing positions during the negotiations and its obvious intention to move towards, rather than away from, Magic Hat's Marks. Accordingly, on May 16, 2013, Magic Hat filed its original Complaint against West Sixth, in which Magic Hat alleged claims of trademark and trade dress infringement under the Lanham Act, and trademark infringement and unjust enrichment under state law.  (Docket No. 1).

57.     On May 17, 2013, one of West Sixth's owners, Ben Self, sent Jim Brayton a message via Facebook.  Mr. Brayton is responsible for Magic Hat's web design and marketing. The message was sent in response to Magic Hat's filing of an opposition petition related to West Sixth's trademark application with the United States Patent and Trademark Office.   In his Facebook message, Mr. Self threatened Magic Hat with a "PR disaster" if Magic Hat's objection to West Sixth's Marks continued.  Mr. Self stated, in pertinent part:

* * * * *

I'm wondering if you are aware of the trouble Magic Hat has given us recently? Now publicly available at: http://ttabvue.uspto.giv/ttabvue/v?pno=91210592&pty=OPP

* * * * *

I'm writing today to see if there is any chance folks up there can be convinced to be reasonable about this whole thing?  I think it is actually in their best interest to be reasonable – no one is actually confusing the two brands, and if it goes much further it could turn into a PR disaster for Magic Hat (they can just go down the street and ask Ben and Jerry's how that turned out for Hagendaas!).  We've had

other distributors (who distribute both West Sixth and Magic Hat) even reach out
on our behalf because if it becomes public "we can just write off our Magic Hat
business forever".

58.     Following Mr. Self's Facebook message to Mr. Brayton and after learning that
Magic Hat had filed this lawsuit, West Sixth maliciously made good on the threat of a "PR
disaster for Magic Hat."

59.     It was in response to the Complaint that West Sixth, on or about May 21, 2013,
placed or caused to be placed a number of false and/or misleading advertisement materials
concerning Magic Hat on its website, www.westsixth.com **(Exhibit K)**, and its Facebook page
**(Exhibit L)**.  In a "plea" to public consumers, West Sixth purported to need help to defend
Magic Hat's "silly" lawsuit, portraying itself as the innocent, unsophisticated victim of
"corporate bully" tactics.  Among the false statements and half-truths in its concocted story were
the following advertising materials that West Sixth knew to be false and/or misleading:

        a.    "Unfortunately, our success has also made us a few enemies. And this week,
one of those enemies got so mad, they decided to try and force us out of business by filing a silly
and frivolous lawsuit against us."   Magic Hat is not an "enemy" of West Sixth, nor has it
"decided to try and force [West Sixth] out of business," nor is this lawsuit frivolous.  Prior to this
lawsuit, Magic Hat distributors, the public at large and even West Sixth's employees noted the
confusing similarity between West Sixth's 6 Marks and Magic Hat's #9 Marks and trade dress.
These confusing similarities were repeatedly brought to Magic Hat's attention.

        b.    "Magic Hat is a brewery originally based out of Vermont" and "they're not
even in Vermont anymore."   These statements made in advertisements are intended to mislead
public consumers into believing that Magic Hat IP, LLC is no longer based in Vermont, but is in
reality a huge, foreign-owned conglomerate, a tale that fit more conveniently into West Sixth's

16

David v. Goliath sound bite.  The truth, however, is that Magic Hat operates a brewery and retail store in Vermont, where it has always been.

   c. "[West Sixth's] logo includes the words 'West Sixth Brewing.' We think that makes it pretty clear."  This is misleading, as West Sixth has acknowledged that it has used and intended to continue to use its 6 Marks without any accompanying "West Sixth Brewing" identification:









And, after originally committing in principle to use the logo only with "West Sixth Brewing" around it, West Sixth later argued that it was reserving the right to use the mark without "West Sixth Brewing" around it.  Accordingly, its representation did not accurately reflect West Sixth's true use and intention to use the logo *without* "West Sixth Brewery" around it, attempting to mislead public consumers to believe Magic Hat was unreasonably ignoring this as a distinguishing feature.

       d.  "In fact, we tried to reach out to [Magic Hat] individually to see if there was any way to resolve this amicably, but to no surprise, no one ever called us back."  This statement made in advertisement misleads the public consumers by purposefully omitting any reference to the extensive communications between the parties evidencing Magic Hat's good-faith effort to resolve its claims, as well as West Sixth's agreement in principle to modify its logo and its later

reversal of course.  Further, after a diligent inquiry, Magic Hat is not aware of West Sixth ever reaching out to Magic Hat informally to see if the matter could be "resolved amicably," other than Mr. Self's threatening Facebook message sent to Mr. Brayton on May 17, 2013.  In fact, West Sixth's counsel made clear in her October 26, 2012, letter that all future communications with West Sixth must be directed to her, not to anyone directly at West Sixth.

> e.  "So, they clearly have another motive – which must be to make us spend so much money defending our actions that we have no other recourse than to cave to their demands."  This statement made in advertisement falsely suggests that Magic Hat's lawsuit is driven by malice, rather than its good-faith, well-grounded intention to protect its legitimate intellectual property rights.

> f.  "After all, they don't sell all that much beer here in Kentucky. We don't really know – although we have our suspicions. There's clearly been someone in Lexington spreading the rumor that we were 'about to get sued' – I even heard it from a checkout clerk at the grocery store! So, we're guessing that someone in the area is prompting the lawsuit in order to try and hurt us locally."  This misleadingly suggests both that Magic Hat's product does not sell well in Kentucky and that this lawsuit is part of some sort of conspiracy by Magic Hat and unnamed parties to "hurt" West Sixth locally, all of which is false.

60.    West Sixth's statements made in social media networking sites such as Facebook constitute advertising materials.

61.    Following these false and/or misleading advertising materials, which, upon information and belief, were promoted by West Sixth as "sponsored links" to appear in fan and non-fans' Facebook news feed, both the website and the Facebook page also urge visitors to sign a "petition" that will then cause an e-mail to be transmitted "with your comments to Kimberly

Markert, the person who signed the lawsuit!"  There is no such person.  Upon information and

belief, the petition also fails to disclose that the email is being transmitted to at least four other

individuals.

62.     Instead, in each instance in which a person "signs the petition," an e-mail

communication is transmitted to Magic Hat's representative and three of its attorneys, consisting

of the following form statement: "Dear Magic Hat - I'm a passionate craft beer drinker.  I don't

support your lawsuit against West Sixth Brewing in Lexington, KY and think you need to stop

being a corporate bully.  Please drop your lawsuit immediately."  In response to West Sixth's

emotional and misleading pleas, public consumers rallied to the aid of West Sixth, who had

intentionally and recklessly painted itself as the mistreated victim of a large, corporate "bully."

These "fans," acting on the false, misleading, and inflammatory information purposely

disseminated by West Sixth, directed more than 16,500 petition signatures/emails to Magic Hat

and its counsel via five different email accounts.

63.     Individuals who sign the petition also may include comments.  Many of these e-

mails have included outraged, indignant comments in which consumers – induced by the false,

misleading and inflammatory statements set forth above – express their intention to stop

purchasing Magic Hat's products **(Exhibit M)**.  Many others are riddled with invective,

profanity, and malice.  Among the choicest examples:[1]

| Date | Name | Comment |
|---|---|---|
| May 21, 2013 | Christopher Gleim | This is corporate bullying, and until it stops, I will not drink Magic Hat and will actively encourage everyone I know not to drink it either.  This is a shameful lawsuit. |
| May 21, 2013 | Ivy Brashear | Now I know exactly what beer to avoid in the future: Magic Hat in all its forms.  I'll never buy another |

---

[1] Asterisks have been substituted for certain letters in profane words quoted in the charts set forth in this First Amended Verified Complaint.

| | | |
|---|---|---|
| | | drop! |
| May 21, 2013 | Kevin Dinsmore | Absolutely absurd.  I will NEVER purchase anything branded Magic Hat again. |
| May 21, 2013 | Carl Root | Stop being a*sholes. |
| May 21, 2013 | Rob Johnson | I won't buy your beers until you drop this lawsuit. |
| May 21, 2013 | Stacy Morgan | I have stopped drinking Magic Hat beers until you drop this ridiculous lawsuit.  I will encourage my friends to do likewise. |
| May 21, 2013 | Charles Young | Stop your corporate bullying of craft breweries.  You've lost my business, and the business of as many people as I can influence.  What a disgrace. |
| May 21, 2013 | Nick Wilson | I will never drink Magic Hat again.  Done. |
| May 21, 2013 | Nathan Dickerson | Magic Hat #9 has been one of my all time favorite beers, and I order it every time I visit Old Chicago.  However, this lawsuit seems like a bullying tactic to one of my favorite micro-breweries, so I will not be purchasing any more Magic Hat #9 and telling my friends to do the same. |
| May 21, 2013 | Sharon Barron | I used to like Magic Hat but if this is the way you operate going after local brewers I will make sure that all of my Vermont friends/family know and we will no longer purchase any of your products. Come on- grow up! |
| May 21, 2013 | Shannon Shields | I won't be buying ANY products sold by your corporation until you drop this frivolous suit against West Sixth Brewing in Lexington, Kentucky - a kick a*s Kentucky company all the way!  Something you obviously fail to comprehend. |
| May 21, 2013 | Robert Ecker | Shove it! I'll never drink another Magic Hat again!  I WAS a big fan, but no more! |
| May 21, 2013 | Jack Renaud | Tell cervecia to stick it. |
| May 21, 2013 | Steve Lucas | Magic Hat is pathetic |
| May 21, 2013 | Jesse Hesley | This is ridiculous! Just drop it.  I will not be drinking you been anymore and will encourage others to do the same. |
| May 21, 2013 | Greg Jacobs | Until you drop this lawsuit I am boycotting and urging my friends, all of us big purchasers of craft brews and spread throughout the world, to boycott your beers and all brands under Cerceceria Costa Rica. |
| May 21, 2013 | Luke Talkers | Drop it or I'll never drink another Magic Hat again.  Pathetic. |
| May 21, 2013 | Jennifer Harper | Absurd.  I won't be drinking magic hat anymore. |
| May 21, 2013 | Michael Staton | Kiss my a*s! I'll never buy your sh*t beer again. |
| May 21, 2013 | Shayla Anthony | Frivolous lawsuits like this make you loose |

21

| | | customers. I've made sure to research all brands owned or operated by Cerveceria Costa Rica - and I will NOT purchase or support any of those products. I will also share this information to other friends who share the same love of craft brews, to make sure they boycott your products as well. Shame on you for trying to make a quick buck… |
|---|---|---|
| May 21, 2013 | Tyler Karling | Bull sh*t corporate sell outs. |
| May 21, 2013 | Dax Manley | Magic Hat is just needing some extra cash and trying to damage a better company and better beer |
| May 21, 2013 | Dylan Roeder | Pls stop bein fgts |
| May 21, 2013 | Stuart Lichtenberg | Don't f*ck with Kentucky or West Sixth |
| May 21, 2013 | Annie Sullivan | They are a*sholes, seriously… GROW UP |
| May 21, 2013 | Samantha Brewer | Guys, don't be a d*ck. |
| May 21, 2013 | Mick Jeffries | Poor form, MH. Play nice or go home to Costa Rica. |
| May 21, 2013 | Matt Gruber | I never buy magic hat's beer (because I think they make terrible beer), but not I'm urging my friends who do to not buy their beer anymore, because of their disgusting attacks on this company. |
| May 21, 2013 | Elizabeth Roach | A shamelessly greedy and irrational move, Magic Hat. |
| May 21, 2013 | Mary Endicott | Leave West Sixth Brewing alone, you greedy d*uchebags! |
| May 21, 2013 | Steve Koenmann | As a Vermonter, I am ashamed that a former Vermont company would be so underhanded and disingenuie! |
| May 21, 2013 | Jon Taylor | Corporate bullying is bullsh*t, and your antics have cost you this customer and will cost you many MANY more if you don't cut the crap. |
| May 21, 2013 | Tom Self | The Federal District Judge to whom your suit has been assigned is a "NO NONSENSE" Federal Judge who will not tolerate frivolous litigation. Your counsel should carefully consider dismissing this litigation before an answer is required to be filed to avoid his wrath. Otherwisw welcome to our ballpark. |
| May 21, 2013 | Mike Strickland | I handle social media for the San Diego Beer Club, a club of 1,800+ craft beer enthusiasts. I encourage you to drop your frivolous "Goliath vs. David" lawsuit against West Sixth brewing, and I want to know that I'm going to encourage our 1,800+ members to contact you with a similar entreaty (as well as get the word out about this lawsuit to all of our members and followers via social media). |

64. But West Sixth did not stop there; it posted the message from its website on its Facebook account, which also drew a tremendous number of comments. **(Exhibit N.)** A small sample of those comments are provided:

| Date | User Name | Comment |
|------|-----------|---------|
| May 21, 2013 | Rikki Gard | Magic Hat = A*s Hat |
| May 21, 2013 | Cameron Streutker | It's not hard to boycott beer that sucks. |
| May 21, 2013 | Charley Pallos | I'm going to make an "a*s hat" logo that looks just like theirs. A-holes. |
| May 21, 2013 | Joe Ross | Just wrote on their wall letting them know I won't be buying another one of their beers until this is dropped. |
| May 21, 2013 | Caitlin Stamper | Never will magic hat beer touch my lips |
| May 21, 2013 | Michael Nolan | Yeah Magic Hat just lo[s]t my support |
| May 21, 2013 | Danny Klau | Not like I needed a reason to boycott Magic Hat, their piss flavored beer was reason enough. |
| May 21, 2013 | Nick Wilson | Even when they drop it I will never drink magic hat again. |
| May 21, 2013 | Ben Wilson | Magic Hat is owned by North American Breweries. According to their website, these are all the other tasteless beers they sell: DUNDEE, GENESEE, GENNY LIGHT, HONEY BROWN LAGER, IMPERIAL, LABATT 52, LABATT BLUE, LABATT BLUE LIGHT, LABATT BLUE LIME, MAGIC HAT, PORTLAND BREWING, PYRAMID, SEAGRAM'S ESCAPES, SEAGRAM'S SMOOTH. |
| May 21, 2013 | Jayson Richardson | Am officially boycotting Magic Hat. |
| May 21, 2013 | John Plumley | Spreading the word big K. I was a huge fan of Magic Hat and now I'm never drinking it again. |
| May 21, 2013 | Hannah Allen | Totally used to love Magic Hat not now that I know all of this, I'll quit buying from them!! Pretty crappy of them! |
| May 21, 2013 | Crotch Thumper | I forwarded to ~ 100 influential haus house harriers (drinkers with a running problem ~ we drink mass amounts of beer !) all over the USA . A good number of those has already reposted and forwarded this info to their list serv. |
| May 21, 2013 | Coty Clark | F*ck magic hat I'll never buy that shit again |
| May 21, 2013 | Heath Greenwell | Sucks, I like their beer, but wont be buying it |
| May 21, 2013 | Kyle Honerlaw | Never drinking a Magic Hat beer again. 1. They are not a craft brewery anymore, 2. Can't believe they would try to sue another brewery for such weak reasons, 3. Their beer is not good! |
| May 21, 2013 | Andy Manning | Magic hat's beer sucks bad enough as it is. This is just |

| | | another reason to not drin their swill. |
|---|---|---|
| May 21, 2013 | Casey Musgrave | Shame on you magic hat.  You will no longer grace the shelves of my fridge. |
| May 21, 2013 | Matthey Henahan | I vote with my wallet. I'll never buy a Magic Hat again. |
| May 21, 2013 | Kyle Cornette | I am behind you 100%.  My buddy works for a beer store here in Ashland, KY.  He has officially declared that no more Magic Hat will pass through his doors to be sold.  Also, he is going to be pushing your beer even harder. |

65.     West Sixth's Facebook page raised the stakes; not only were consumers pledging to boycott Magic Hat's products, but retailers were also removing Magic Hat's product from their bars and liquor store shelves.

66.     As an example, on May 21, 2013, Mellow Mushroom (a restaurant and bar in Lexington) stated that "Magic Hat #9 has been officially [] taken off tap as of this afternoon." **Exhibit N**.  West Sixth responded to Mellow Mushroom's posting via Facebook that same day: "Thank you!"  In addition, Scot Skidmore posted on Facebook: "Packed Liquor Store owner here pulling Magic Hat. The Midway Whistlestop in Midway, Kentucky."  **Exhibit O.**  Magic Hat has since been informed by a distributor in Lexington that its taps have been removed from two additional bars.

67.     Also, user Oliver Klosoff posted the following images on West Sixth's Facebook page showing that he pulled the Magic Hat #9 product from the shelves of his store after West Sixth's false advertising materials were disseminated:

 **Oliver Klosoff**
Here's the after pic. I pulled their product from my shelves.



Like · Comment · Share · 18 hours ago



**Oliver Klosoff**
I've had enough and sent this to Magic Hat:



Like · Comment · Share · 18 hours ago

**Exhibit P.**

68.     Magic Hat's distributor in Lexington also has informed it that a liquor store has been getting substantial pressure from a number of consumers not to carry Magic Hat's products.

69.     Perhaps emboldened by the success of its first round of misrepresentations, on May 22, 2013, West Sixth posted on Facebook and its website another round of false advertising materials under the guise of a "settlement proposal":

> Dear Cerveceria Costa Rica (owners of the Magic Hat Brand),
>
> We saw that you finally decided to hire a PR person to reply to our petition from yesterday. I suppose after more than 10,000 people signed it, you couldn't ignore it any more.

Since you decided to publish our letters (which I hope everyone takes the time to read, they're hilarious), we also want to make sure everyone can see the full text of the bogus lawsuit. As you can see there are some crazy claims in it, and some that even look like it might have been copied and pasted from other lawsuits – what's that craziness about us moving into South Carolina?

We thought that **since you won't return any of our personal phone calls or emails**, the best way to communicate with you must be over Facebook. So, here goes: ——

To address your points directly:

■You claim that you worked for months in good faith to negotiate with us. Actually, in our letters, which you've published, anyone can see that we've waited on a reply from you from our last letter for nearly 3 months. In that letter, we made several concessions in the last offer, including to keep the words "West Sixth Brewing" near our logo in any further designs. But instead of responding with a call, or a letter, you responded with a lawsuit. That's not negotiating, that's bullying.

■You said that "talks between the two breweries started in September of 2012 after marketplace concerns surfaced by a Kentucky wholesaler who refused to carry West Sixth Brewing because he felt it too closely resembled Magic Hat." Unfortunately, that **isn't true at all**. We have two distributors who distribute both us and Magic Hat without any sort of confusion. We're sorry that this is what you were told. What actually happened between us and your distributor is this: After we had advanced negotiations to sign with your distributor they were told by another brand they carry that they should not distribute our beer.

All that said, as we indicated in previous notes, we'd rather solve this problem than keep it going — after all we've got good beer to make. So, here's what we propose: In your public response, you indicated you would be happy with a settlement that includes the 4 clauses you outlined. **We pretty much agreed in our last letter to do items 2-4, which were:**
**2) Including our name around our logo in future items**
3) Phasing out any merchandise that doesn't include the words "West Sixth Brewing" in close proximity to our logo
**4) Amend our current federal trademark to include something different from the compass**

**What we had a concern with was number 1, replacing our compass with a different symbol in exchange for agreeing that we would never use the numeral "6".** We just don't think your trademark rights in the numeral "9" allow you to keep out any competitor who uses the numeral "6". Our address is 501

27

West Sixth Street – hence our name.  We're not trying to use any of your designs. Heck, we already distribute a lot more beer than you do in Kentucky.

So, let us get this straight. When you say you're presenting "the truth", the "truth" is that you are suing us in federal court because of the compass in our logo?

If that's what it takes to resolve this, why didn't you say that in response to our last letter, rather than waiting 3 months and then filing a lawsuit?

While we have the law on our side, we're reasonable people, and we don't want to spend all our money on court – we're brewers not fighters.

We're willing to phase out the current design of our compass and replace it with something that is more clearly a compass and not a star. Here are a couple quick options our designed worked up for you to choose from.

Will you publically agree to drop the lawsuit and trademark protest if we select one of these as our new trademark? We'll let you pick the one you like best. You can email us directly here, or you can just post another update to your Facebook page, either one works.

So, what do you say, let's bury the hatchet and down a beer together? We'd greatly appreciate a response as quick as yesterday's this time – no 3 month wait this time, please.

**Exhibit L** (emphasis supplied to show examples of false statements).

70.    As an initial matter, West Sixth directs this post to "Cervecceria Costa Rica," which it names as the owner of Magic Hat's brand.  This entity has absolutely nothing to do with this dispute and it performed none of the actions attributed to it in the post.  Upon information and belief, West Sixth chose this entity as Magic Hat's "owner" because it fit in well with its story that Magic Hat is really a foreign conglomerate "bully," not a craft brewer. In truth, the ultimate parent company of Magic Hat, is an entity named "Florida Farm and Ice." Upon information and belief, West Sixth did not want to use Magic Hat's correct name (Magic Hat) or, if it was going to use the overall owner, Florida Farm and Ice, because neither of those names fit in with West Sixth's message—that Magic Hat is a foreign behemoth, not a small local craft brewery. Accordingly, upon information and belief, West Sixth picked the most "foreign-

sounding" entity that is related to West Sixth in order to emotionally manipulate the public consumers.

71.     West Sixth's second false advertisement in this communication is "since you won't return any of our personal phone calls or emails…" This advertisement is another attempt to garner public sympathy and support by making false statements about Magic Hat.  On October 26, 2012, however, West Sixth's counsel advised that Magic Hat was to direct all future correspondence with West Sixth to her.  **Exhibit F.**  Further, as discussed above, Magic Hat is not aware of anyone at Magic Hat ever receiving any personal phone calls from West Sixth. And the only personal "email" Magic Hat is aware of is actually a message sent via Facebook by Mr. Self to Mr. Brayton.  Mr. Self knows Mr. Brayton from the time he worked in Burlington, Vermont, and Mr. Brayton responded via Facebook that same day.

72.     The third false advertisement is West Sixth's representation that Magic Hat lied when it said that in September of 2012, a Kentucky wholesaler refused to carry West Sixth's beer because he felt that it too closely resembled Magic Hat's #9 Mark.  Unlike West Sixth's false advertisements, Magic Hat's statement is true and West Sixth's statement to the contrary is false.

73.     Next, West Sixth states that in its February 27, 2013 letter to Magic Hat, it "pretty much" agreed to (1) include WEST SIXTH BREWING around its 6 and Design Mark in the future and (2) amend the mark in its trademark application to include a design other than the eight-pointed star. Even a cursory review of West Sixth's letter reveals the falsity of this advertisement, as set forth below.  *See* **Exhibit J**.

74.     First, the letter clearly provides: West Sixth will have a United States trademark registration for its WEST SIXTH BREWING 6 and design mark, including the eight-pointed

star.  West Sixth even demands that Magic Hat agree not to oppose West Sixth's application to register such mark.

75.     Second, West Sixth does not agree to use WEST SIXTH BREWING around its 6 and Design Mark generally.  It agrees that it will use WEST SIXTH BREWING around its 6 and Design Mark only in certain and limited circumstances.

76.     Further, West Sixth states that Magic Hat demanded that West Sixth agree never to use the numeral 6.  This is undeniably false.  Magic Hat never asked West Sixth to stop using the numeral 6 and none of the letters exchanged contain that term.

77.     West Sixth's purported "settlement offer" *posted on Facebook* is nothing more than another platform for West Sixth to intentionally cause more harm and damage to Magic Hat through false advertisement.

78.     Moreover, West Sixth consumers contacted Magic Hat's consumer affairs group to voice their complaints about Magic Hat's lawsuit.  Magic Hat received in excess of 200 contacts from consumers in direct response to West Sixth's false and malicious advertisement materials.  Several of the consumer complaint emails are attached as **Exhibit Q**.

79.     Many of the comments are similar to those cataloged above.  However, two are worth noting because they shows the tremendous damage that West Sixth's false advertisements have caused:

- Dear Idiots:  I've had a few of your beers & they were all really bad.  Fine, no big deal.  Until you sue a small brewery in my local area over their logo, which is a 9, not an "upside down 9".  Your attack on West 6th shows the whole beer loving world what horrid people you are, and will do you more harm thatn good.  I personally plan to dedicate a large amount of time to negative reviews and comments of your beers and your company, and I promise to degregate your products every chance I get.  From Mark Troutman on May 21, 2013.  **Exhibit Q.**

30

- I manage a large liquor, beer and wine store close to a large college campus.  I will no longer be purchasing your beer due to your lack of judgment in filing a lawsuit against west sixth.  Greed is truly a terrible thing.  From Keith Lakes on May 23, 2013.  **Exhibit Q.**

80.    Shortly after West Sixth posted its false advertisement on its website and Facebook, consumers and retailers began to post comments on third-party websites.  Attached as **Exhibit R** are postings on the website Beer Advocate, which is a well-known website for information about beer and the beer industry.

81.    On the Beer Advocate website, consumers made similar posts to those discussed above, but in addition:

- a retailer posted images showing that it removed Magic Hat #9 beer from its coolers and no longer offered it for sale (posted by harperman69 on May 21, 2013 at 7:04 pm);

- a retailer said "I sell beer in two different businesses, restaurant and C-store.  I'll let my distributor know that I will no longer carry Magic Hat" (posted by harperman69 on May 21, 2013 at 6:23 pm);

- "Official Response from West Sixth.  As I figured there was a bit more things than Magic Hat was leading on.  I recommend anyone interesting in this story to read it in full.  The part about Magic Hat asking West Sixth to stop using the number '6' in anything is quite inappropriate (they are located on West Sixth Street, hence the name) if you ask me (posted by sefus12 on May 22, 2013 at 3:45 pm); and

- "WTF? They agreed to change 3 of the 4 things Magic Hat wanted changed.  They drew the line at refusing to stop using numeral six.  How is that not cooperation?" (posted by ricoffey on May 22, 2013 at 5:00 pm).

82.    In response to the frenzy brought on by West Sixth's social media campaign, Magic Hat issued a press release stating that it thought this matter was better handled in a private, business-like and confidential manner and invited West Sixth to make the same commitment.

31

83.     In response, on May 23, 2013, West Sixth again took to its website and sponsored posts on Facebook to further manipulate its followers. In this posting, again addressed to "Cerveceria Costa Rica," which again has absolutely nothing to do with this dispute, in a thinly-veiled effort to paint Magic Hat as the overbearing foreign conglomerate, West Sixth stated as follows:

> On Tuesday night, Cerveceria Costa Rica (owners of Magic Hat IP) posted **4 conditions to outline a way to settle our differences.** On Wednesday morning, **we accepted all 4 conditions** and showed them 4 different new options for our logo. All they had to do was select one of them.
>
> **But it's been more than 24 hours, and we still haven't had a response to our offer.**

(emphasis added to indicate examples of false and/or misleading advertisements). **Exhibit L at 1-2.**

84.     Once again, this advertisement was false and was intended to mislead consumers into believing that the huge, multi-national bully was ignoring its "settlement proposal." First, as mentioned above, Cervecceria Costa Rica never posted "4 conditions" on its Facebook page or anywhere else.  That entity is not involved in this dispute in any way.  Further, Magic Hat and its counsel had responded to West Sixth's counsel.  In fact, Magic Hat's counsel had had multiple communications with West Sixth's counsel (West Sixth's own requested method of contact) within the previous 24 hours in a good faith effort to resolve the matter privately and confidentially. Private and business-like negotiations did not fit into West Sixth's David v. Goliath/trademark-bully story line, however, and would have impeded its efforts to harm Magic Hat and its brand.  In addition, the communication above implies that Magic Hat had made a settlement proposal that was "accepted" by West Sixth.  This also was not true and was intended

to mislead consumers into believing that Magic Hat would not settle the case even though West

Sixth had accepted its "terms." In short, it was another deliberate mischaracterization of events in

an effort to further destroy Magic Hat's reputation and brand.

85.     West Sixth concludes the missive by again imploring the public consumers to

renew their efforts to harass Magic Hat and destroy its reputation:

> Our campaign is winning. We've got their attention. Nearly 15,000 people have
> joined our campaign to tell Magic Hat "No More". If you haven't yet signed it,
> please go here and do it right now.
>
> We have to keep the pressure on. Can you help by doing these 4 things today?
>
> 1) Share a link to http://www.nomoremagichat.com/ on your Facebook page and
> Twitter feed. This is critical to our success. Even if you've done it before.
>
> 2) Send a quick email to 3 of your friends asking them to sign the petition. The
> email can be really simple – just say: This is an important issue to me and I'd
> really appreciate your support.
>
> 3) Post something to the Magic Hat Facebook page at
> http://www.facebook.com/magichatbrewing letting them know what you think
> about their corporate bullying.
>
> 4) If you know any friends who are reporters, can you send them a quick note
> suggesting that they might like to write about this frivolous lawsuit?
>
> If you can help us by doing those 4 things today, I know we'll be successful.
>
> Thank you again for joining us in telling Magic Hat "No More"!

**Exhibit L at 1-2.**

86.     In response, Magic Hat was besieged with thousands more angry emails, abusive

posts on its Facebook page, and consumer complaints, all fueled by West Sixth and its

misleading and malicious advertising campaign to harm Magic Hat.  **Exhibit L.**

87.     On its Facebook page, West Sixth had the opportunity to correct some of its false

advertising when consumers posted the following comments:

- I wish you guys the best of luck and agree its wrong for Magic Hat to not even sit down with you, but if you showed me this logo and asked me to guess what it was, I would have said "a new magic hat beer.?"  In fact, I actually did that with my husband just now and he guessed the same thing.  They don't need to bully the little guys though.  They should give you the opportunity to make things right without bankrupting you.  From Dana Spencer Hughes.  **Exhibit N.**

- (1) Can I ask if they have sent you a C&D before they hit you with a lawsuit; (2) can you please clear up an issue…is this the first time you've been contacted or have they sent a number of C&S letters; and (3) had Magic Hat sent you C&D letters before this lawsuit?  From Jeff Gish.  **Exhibit N.**

- Is Magic Hat's cease-and-desist letter available to read somewhere?  From Michael Barnett.  **Exhibit N.**

88.     Instead of correcting its false advertising in response to direct inquiries from consumers, West Sixth chose to ignore those consumer comments.  **Exhibit N.**

89.     West Sixth's media attack on Magic Hat, founded upon false advertisements and misrepresentations, is destroying not only Magic Hat's goodwill and reputation, but also the goodwill and reputation of other brands offered by companies affiliated with Magic Hat.

90.     West Sixth's intentional and irresponsible actions have heavily damaged Magic Hat's relationships with its consumers, retailers, and distributors nationwide.

91.     As a result, Magic Hat's sales are suffering, which is the natural and intended consequence of West Sixth spreading false and misleading advertising materials and statements about Magic Hat and inducing consumers and retailers to boycott its products.

92.     It is likely that the damage to Magic Hat's brand and reputation can never be repaired.

93.     And, the monetary value of such damage is not easily or readily calculated and difficult to quantify.

94.     However, such harm and damage are very real.  The comments elicited by West Sixth's misrepresentations and false advertisements have devastated Magic Hat's brand in accordance with West Sixth's obvious intentions.

95.     Magic Hat cannot stand by and allow West Sixth to destroy its hard-earned reputation in a calculated media attack founded upon false advertisements.

### FIRST CLAIM

### TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (15 U.S.C. § 1114)

96.     Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

97.     Magic Hat owns United States Trademark Registration No. 2024581 for the #9 Mark for use in connection with beer and ale.  **Exhibit A.**

98.     Magic Hat's registration is valid and subsisting and its rights in the #9 Mark are now incontestable.

99.     Magic Hat owns United States Trademark Application Serial No. 85883897 for the #9 Design Mark for beer and ale.  **Exhibit C.**

100.    Defendant West Sixth's use of its confusingly similar marks in interstate commerce for its beer, ale, and brewpub services, without Magic Hat's consent, constitutes the unlawful trademark infringement by West Sixth of Magic Hat's #9 Marks.

101.    Defendant West Sixth's use of its confusingly similar marks in interstate commerce, without the consent of Magic Hat, in connection with beer, ale, and brewpub services, has caused, continues to cause, and is likely to cause confusion, mistake, and deception in the minds of the consuming public.

102.    Defendant West Sixth's use of its confusingly similar marks has deceived and is likely to continue to deceive consumers as to the source or origin of its products, and constitutes infringement of Magic Hat's #9 Marks.

103.    Defendant West Sixth's use of its confusingly similar marks has resulted in actual confusion.

104.    By reason of the foregoing, Magic Hat has been injured by Defendant West Sixth's trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

105.    Upon information and belief, Defendant West Sixth has acted with full knowledge of Magic Hat's rights and in willful violation of 15 U.S.C. § 1114.

106.    Defendant West Sixth's use of its confusingly similar marks is causing and will continue to cause Magic Hat irreparable harm, for which it has no adequate remedy at law, and, thus, Magic Hat is entitled to injunctive relief.

107.    In addition to irreparable harm suffered by reason of West Sixth's acts, Magic Hat has suffered, and will continue to suffer, damages in an amount to be proven at trial, including costs and attorneys' fees.

**SECOND CLAIM**

**TRADEMARK INFRINGEMENT UNDER SECTION 43
OF THE LANHAM ACT (15 U.S.C. § 1125)**

108.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

109.    Magic Hat has used the #9 Mark for beer and ale since at least as early as 1995 in the United States and since at least as early as 2009 in Kentucky.  Magic Hat has used the #9 Design Mark for beer and ale since at least as early as 2007 in the United States and since at least as early as 2009 in Kentucky.

110.    Based upon its substantial, exclusive, and continuous use of these marks for beer and ale, Magic Hat has developed significant trademark rights in such marks.

111.    In 2012, or in any case, long after Magic Hat began use of its #9 Mark and #9 Design Mark for beer and ale, West Sixth began using its confusingly similar 6 Marks for beer, ale, and brewpub services.

112.    Defendant West Sixth's use of its 6 Marks for beer, ale, and brewpub services is likely to cause confusion or mistake, or to deceive as to its affiliation, connection, or association with Magic Hat or as to the origin, sponsorship, or approval of West Sixth's goods and services.

113.    Based upon the foregoing, West Sixth's use of the 6 Marks for beer, ale, and brewpub services constitutes trademark infringement under 15 U.S.C. § 1125.

114.    By reason of West Sixth's acts, Magic Hat has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Magic Hat is entitled to injunctive relief.

115.    In addition to the irreparable harm suffered, by reason of West Sixth's acts, Magic Hat has suffered and will continue to suffer damages in an amount to be proven at trial, including costs and attorneys' fees.

### THIRD CLAIM

### TRADE DRESS INFRINGEMENT UNDER SECTION 43
### OF THE LANHAM ACT (15 U.S.C. § 1125)

116.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

117.    The Magic Hat Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning in the marketplace.

118.    Defendant West Sixth is unfairly competing with Magic Hat by adopting an infringing trade dress to identify its goods and services.

119.    The intent and result of Defendant West Sixth's actions has been a palming off of West Sixth's goods and services as emanating from or being endorsed by Magic Hat, causing confusion, mistake, and deception among the public as to the source and origin of those goods and services.

120.    The foregoing acts of West Sixth are intended to cause, have caused, and are likely to cause confusion, mistake, deception among consumers, the public, and the trade who recognize and associate the Magic Hat trade dress elements with Magic Hat.

121.    Moreover, West Sixth's conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of the infringing products, or as to a possible affiliation, connection, or association between Magic Hat, West Sixth, and the infringing products.

122.    Defendant West Sixth's use of an infringing trade dress has caused and, unless restrained, will continue to cause injury to Magic Hat.

123.    Defendant West Sixth's actions constitute false designations of origin, false and misleading descriptions, and false and misleading representations that are likely to cause confusion, mistake, and deception.  By using a confusingly similar trade dress, Defendant West Sixth has misrepresented the nature, origin, characteristics, and quality of its products, in violation of the Lanham Act (15 U.S.C. § 1125(a)).

124.    By reason of West Sixth's actions, Magic Hat has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and, thus, Magic Hat is entitled to injunctive relief.

125.    In addition to the irreparable harm suffered by reason of Defendant West Sixth's actions, Magic Hat has suffered and will continue to suffer damages in an amount to be proven at trial, including costs and attorneys' fees.

**FOURTH CLAIM**

**FALSE ADVERTISING AND TRADE DISPARAGEMENT UNDER SECTION 43
OF THE LANHAM ACT (15 U.S.C. § 1125)**

126.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

127.    The advertisements and conduct by West Sixth described above were false and/or misleading representations of fact made with malice regarding Magic Hat's products and business and in connection with West Sixth's sale of its products.

128.    The false and/or misleading statements described above were material to Magic Hat's and West Sixth's customers, including both retailers and consumers.

129.    The statements made by West Sixth described above were made in interstate commerce.

130.    The statements by West Sixth described above constitute commercial speech, were made by a competitor – predominantly to reap an economic benefit – and were disseminated to the public.

131.    The conduct by West Sixth constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

132.    Defendant West Sixth's conduct is causing and will continue to cause Magic Hat irreparable harm, for which it has no adequate remedy at law, and, thus, Magic Hat is entitled to injunctive relief.

133.    In addition to irreparable harm suffered by reason of West Sixth's acts, Magic Hat has suffered, and will continue to suffer, damages in an amount to be proven at trial, including costs and attorneys' fees.

**FIFTH CLAIM**

**STATE TRADEMARK INFRINGEMENT**

134.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

135.    West Sixth has used reproductions, copies, colorable imitations, and/or confusingly similar trademarks in connection with the sale or offering for sale of goods that are likely to cause confusion of the source or origin of the goods.

136.    West Sixth has reproduced, copied, or colorably imitated a trademark and applied it to labels, signs, prints and other writings intended to be used in conjunction with the sale or distribution of goods and services.

137.    Upon information and belief, West Sixth knowingly acted with the intent to cause confusion between its products and Magic Hat's products in violation of Kentucky Revised Statutes 365.601-365.603.

138.    Upon information and belief, West Sixth has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

139.    Upon information and belief, West Sixth intends to continue its infringing acts, unless restrained by this Court.

140.    In addition to the irreparable harm suffered by reason of Defendant West Sixth's actions, Magic Hat has suffered and will continue to suffer damages in an amount to be proven at trial.

## SIXTH CLAIM

### UNJUST ENRICHMENT

141.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

142.    The acts set out above constitute unjust enrichment of West Sixth at Magic Hat's expense, in violation of the common law of the Commonwealth of Kentucky.

143.    Magic Hat has suffered and will continue to suffer damages, including special damages, by reason of Defendant West Sixth's actions in an amount to be proven at trial.

### SEVENTH CLAIM

### UNFAIR COMPETITION

144.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

145.    West Sixth made false and/or misleading statements to Magic Hat's customers and potential customers designed to disparage Magic Hat's business and reputation in the marketplace.

146.    West Sixth's conduct was intended to deceive the public for business reasons.

147.    West Sixth's conduct constitutes unfair competition under the common law of the Commonwealth of Kentucky.

148.    Magic Hat has suffered and will continue to suffer damages, including special damages, by reason of Defendant West Sixth's actions in an amount to be proven at trial.

149.    Magic Hat is without an adequate remedy at law and is entitled to injunctive relief, as well as damages, including special damages, in an amount to be proven at trial.

## EIGHTH CLAIM

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND BUSINESS EXPECTANCIES

150.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

151.    Magic Hat had, and continues to have, ongoing contractual relations and/or expectancy interests with its customers, distributors, and retailers.

152.    Magic Hat had, and continues to have, business expectancies of relations with potential customers, distributors and retailers.

153.    West Sixth had actual knowledge of these contractual relations and business expectancies.

154.    By the conduct described above, West Sixth has wrongfully interfered with Magic Hat's contractual relations and business expectancies in violation of the common law of the Commonwealth of Kentucky.

155.    Magic Hat has suffered and will continue to suffer damages, including special damages, by reason of Defendant West Sixth's actions in an amount to be proven at trial.

156.    Magic Hat is without an adequate remedy at law and is entitled to injunctive relief as well as damages.

## NINTH CLAIM

### TRADE LIBEL

157.    Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

158.     Defendant published and/or caused to be published numerous false statements on the internet and otherwise in violation of the common law of the Commonwealth of Kentucky.

159.     These false statements disparaged the quality of Magic Hat's intellectual property and good will therein.

160.     West Sixth knew or should have known that the false and misleading statements that it published and the conduct it encouraged on the part of its supporters were likely to result in pecuniary loss to Magic Hat and did so result in such pecuniary loss to Magic Hat's brands and its good will in its brands and its reputation have been irreparably harmed, entitling it to injunctive relief and money damages, including special damages, in an amount to be determined at trial.

### TENTH CLAIM

#### DEFAMATION

161.     Magic Hat repeats and realleges each of the allegations set forth in the foregoing paragraphs as though fully restated herein.

162.     The language of the false advertisements and statements published by West Sixth about Magic Hat, as set forth in the foregoing paragraphs, is defamatory.

163.     The false and defamatory advertisements and statements published by West Sixth about Magic Hat, as set forth in the foregoing paragraphs, have exposed Magic Hat to public hatred, ridicule, contempt and/or disgrace, have induced an evil opinion of Magic Hat in the minds of right-thinking people, and have deprived Magic Hat of a relationship with them.

164.     Defendant West Sixth's conduct is causing and will continue to cause Magic Hat irreparable harm, for which it has no adequate remedy at law, and, thus, Magic Hat is entitled to injunctive relief.

165.    In addition to irreparable harm suffered by reason of West Sixth's acts, Magic Hat has suffered, and will continue to suffer, damages, including special damages, in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Magic Hat demands judgment as follows:

A.    finding that West Sixth's use of its 6 Marks for beer, ale, and brewpub services, infringes Magic Hat's trademark and trade dress rights and constitutes unjust enrichment, and

B.    finding that West Sixth's false and misleading statements to the public constitute false advertising and trade disparagement, unfair competition, intentional interference with contractual relations and business expectancies, trade libel and defamation;

C.    directing West Sixth to account for and to pay over to Magic Hat all profits realized by West Sixth as a result of its use of the 6 Marks, its infringement of Magic Hat's trademarks and trade dress, and its acts of unfair competition;

D.    permanently enjoining West Sixth from further infringement of Magic Hat's trademarks and trade dress, and from further acts of unfair competition;

E.    preliminarily and permanently enjoining West Sixth from making false advertising and/or statements and representations to the public or otherwise interfering with Magic Hat's business and reputation in the marketplace;

F.    awarding Magic Hat all damages, special damages, costs, fees, and expenses sustained by reason of the West Sixth's unlawful use of Magic Hat's trademarks and trade dress, unjust enrichment, unfair competition,  intentional interference with contractual relations and business expectancies, false advertising and trade disparagement, trade libel and defamation, trebling the amount of the appropriate damages in accordance with 15 U.S.C. § 1117(a), and

awarding Magic Hat its attorneys' fees and costs reasonably incurred in the prosecution of this matter;

G.      adjudging that Defendant West Sixth willfully violated the provisions of 15 U.S.C. § 1125(a) when it misappropriated Magic Hat's trade dress and disparaged Magic Hat's products and business;

H.      awarding Magic Hat actual and punitive damages to which it is entitled under the applicable federal and state laws referenced or implicated herein;

I.      awarding Magic Hat pre-judgment interest on any monetary award made part of the judgment against West Sixth; and

J.      awarding any such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Magic Hat requests a trial by jury in this matter.

May 25, 2013                                                Respectfully submitted,

                                                           */s/ Joshua R. Denton*
                                                           Joshua R. Denton
                                                           BASS BERRY & SIMS, PLC
                                                           Suite 2800, 150 3rd Ave South
                                                           Nashville, Tennessee 37201
                                                           (615) 742-6200
                                                           jdenton@bassberry.com
                                                           pmills@bassberry.com

                                                           *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of May, 2013, a copy of the foregoing First Amended Verified Complaint (with Verification and Exhibits) was electronically filed with the Clerk of Court using the CM/ECF system and was served on the following via U.S. Mail, first class postage prepaid:

West Sixth Brewing Company, LLC
c/o Registered Agent – Thomas Benjamin Self
148 Woodland Avenue
Lexington, KY 40502

*/s/ Joshua R. Denton*

11902225

46